IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 10 C 05623 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| ETOLEN & BUCHANAN, INC., and JOHN MICHAEL ETOLEN, | ) ) ) | |
| Defendants. | ) ) | |
| JOHN MICHAEL ETOLEN, | ) ) | |
| Counter-Plaintiff, | ) ) | |
| v. | ) ) | |
| LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds, | ) ) ) ) ) ) ) ) ) | |
| Counter-Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

**Background**

On September 3, 2010, the Laborers' Pension Fund ("Pension Fund"), Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Welfare Fund") (collectively, the "Funds") and James S. Jorgensen, administrator of the Funds, filed suit against Etolen & Buchanan, Inc. (the "Company") for failure to pay employee benefit contributions and union dues pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"). In early November, 2010, after succeeding on a motion for default and to compel an audit, the Funds reviewed the Company's books and, according to the Funds, discovered that John Michael Etolen, the Company's president, had knowingly submitted false benefit contribution reports for the purpose of fraudulently obtaining benefits for himself and his wife under the Welfare Fund's healthcare plan.

According to the Welfare Fund, Etolen paid a total of $10,202.42 in contributions, and the Welfare Fund paid out $20,292.79 in health and welfare benefits. As owner of the Company, the Welfare Fund argues, Etolen was not entitled to report his work, pay contributions on that work, or obtain benefits based on those contributions absent an Individual Self-Contributor Agreement with the Funds, which Etolen did not have. After the audit, the Welfare Fund retroactively suspended, to November 1, 2010, Etolen and his wife from the Welfare Fund's healthcare plan. The Funds then sought, and were granted, leave from the Court to file an amended complaint alleging fraud against Etolen as an individual, based on Etolen's submission of alleged false benefit contribution reports in order to obtain health and welfare benefits.

On October 11, 2011, in his answer to the amended complaint, Etolen filed a counterclaim pursuant to § 502(a)(1)(B) of ERISA, as amended, 29 U.S.C. § 1132(a)(1)(B), against the Welfare Fund and its trustees and against Jorgensen. Etolen argues that the Welfare Fund trustees breached their fiduciary duty when they suspended his wife and him from medical coverage under the healthcare plan only after learning, during the audit, that Etolen's wife had been diagnosed with cancer and was scheduled for surgery. Etolen seeks immediate reinstatement into the Welfare Fund's healthcare plan, recovery of restitution costs and expenses incurred and reasonable attorney's fees and costs. The Welfare Fund now moves to dismiss Etolen's counterclaim for failure to exhaust his administrative remedies in response to the Welfare Fund's suspension of him and his wife from the healthcare plan before filing a claim in federal court.

## **Analysis**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Welfare Fund and its trustees and Jorgensen move to dismiss Etolen's counterclaim, arguing that Etolen has failed to state a cause of action because: (1) Etolen did not allege exhaustion of administrative remedies in response to the Welfare Fund's administrative decision to suspend Etolen and his wife from the healthcare plan, as required by the Welfare Fund's ERISA plan and the law of the Seventh Circuit; and (2) Etolen failed to plead an exception to the administrative exhaustion requirement. The application of the administrative exhaustion requirement, however, is within the sound discretion of the district court. *Edwards v. Briggs & Stratton Retirement Plan,* 639 F.3d 355, 361 (7th Cir. 2011). For the reasons set forth below, the Court declines to require administrative exhaustion in this case; accordingly, the motion to dismiss is denied.

In order to survive a motion to dismiss, the counterclaim must contain "a short and plain statement … showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court treats all well-pled allegations as true and draws all reasonable inferences in the counter-plaintiff's favor. *See Cole v. Milwaukee Area Tech. Coll. Dist.,* 634 F.3d 901, 903 (7th Cir. 2011). The issue on a motion to dismiss is the legal sufficiency of the complaint and not the merits of the case. *See AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011). However, the plaintiff has an obligation to provide "enough facts to state a claim to relief that is plausible on its face" and that "raises a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

According to the Welfare Fund, "this Circuit requires that counter-plaintiff must exhaust administrative remedies." Memorandum in Support [#45], at 7. That is not a correct statement of the law of this Circuit. The Seventh Circuit has repeatedly recognized that there is no statutory exhaustion requirement under ERISA and, accordingly, "the district court has discretion to require no exhaustion by anyone." *In re Household Int'l Tax Reduction Plan,* 441 F.3d 500, 502 (7th Cir. 2006); *see also, e.g., Powell v. AT&T Communications, Inc.,* 938 F.2d 823, 825 (7th Cir. 1991) ("The rule in this court is clear: the decision to require exhaustion as a prerequisite to bringing suit is a matter within the discretion of the trial court . . . ."). Indeed, the case that the Welfare Fund cites for the proposition that exhaustion is required, *Stark v. PPM America, Inc.,* 354 F.3d 666 (7th Cir. 2004), expressly states that "[t]he decision to require exhaustion before a plaintiff may proceed with a federal lawsuit is a matter within the sound discretion of the trial court." *Id.* at 671.

4

Unquestionably, however, exhaustion of administrative remedies is "favored," *id.,* and as a general matter courts will excuse a failure to exhaust administrative remedies only in two situations: (1) when there is a lack of meaningful access to the administrative review procedures; and (2) when pursuing administrative remedies would be futile. *See id.* at 672.

Etolen argues that his failure to exhaust administrative remedies should be excused because pursuing the claim through the Welfare Fund's internal administrative procedures would be futile. To come within the futility exception, Etolen "must show that it is certain that [his] claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Zhou,* 295 F.3d at 680 (citing *Lindemann v. Mobile Oil Corp.,* 79 F.3d 647, 650 (7th Cir. 1996)). Moreover, simply asserting futility without factual support is insufficient. *See Lindemann,* 79 F.3d at 650; *Smith v. Blue Cross & Blue Shield United of Wisconsin,* 959 F.2d 655, 659 (7th Cir. 1992). ERISA plaintiffs must present some evidence that the administrative review procedure would not work if pursued. *Blue Cross & Blue Shield,* 959 F.2d at 659.

In his response, Etolen relies on a single fact in support of his futility argument—namely, that the Funds decided to bring a fraud suit against him to recover the cost of the same medical benefits for which he seeks restitution in his counterclaim. The Welfare Fund emphasizes that Etolen failed to plead not only the exhaustion of administrative remedies, but also an exception to that requirement in his counterclaim. As explained above, however, a counterclaim need only contain "sufficient facts to state a claim for relief that is plausible on its face." *Cole,* 634 F.3d at 903 (quotations and citations omitted). *See, e.g., Walker v. Fortis Benefits Ins. Co.,* No. 05-1144, 2005 WL 3157578, at

5

*5 (C.D. Ill. Nov. 23, 2005) ("The Court concludes that dismissal of the Amended Complaint because it fails to allege exhaustion, or because Plaintiff remains silent in the face of the motion to dismiss, would run afoul of federal notice pleading standards and the liberal standard the Court must apply in considering a motion to dismiss…Plaintiff's silence does not compel the conclusion that he failed to exhaust, or that no exceptions to the exhaustion rule apply."). As the *Walker* court explained, all a complaint must do under Rule 8(a)(2) is "give notice of [plaintiff's] claim that [the defendant] denied him benefits due."[1] *Id.* Etolen has done that here by basing his counterclaim on the same set of operative facts as those of the Funds' fraud allegations. Those pleadings, and the record, not only provide notice to the Welfare Funds of the benefits that Etolen alleges are due, but also provide sufficient "factual support," *Blue Cross & Blue Shield,* 959 F.2d at 69, for the reasonable inference that the exhaustion of administrative remedies in this case was, and is, futile—a decision that, as discussed above, is within the reasoned discretion of this Court. *See Wilczynski v. Lumbermens Mutual Casualty Co.,* 93 F.3d 397, 403-04 (7th Cir. 1996) ("At this early stage of the proceedings, we believe that the allegations contained in the amended complaint are sufficient to bring [plaintiff's] claim for…benefits under the futility exception to the requirement of exhaustion of administrative remedies."). It would make little sense for this Court to dismiss Etolen's

---

[1] The Court also notes, as did the *Walker* court, that the exhaustion of administrative remedies is an affirmative defense more appropriately raised on a motion for summary judgment. *See Walker,* 2005 WL 3157578 at *5 ("Further, failure to exhaust administrative remedies is generally an affirmative defense…Defendant's arguments are therefore more appropriately considered in the context of a summary judgment motion attaching evidence of non-exhaustion, evidence which should be readily accessible to Defendant in its own files."); see also *Carter v. Pension Plan of A. Finkl & Sons Co.,* No. 08 C 7169, 2009 WL 5066649, at *4 (N.D. Ill. Dec. 17, 2009) ("Moreover, exhaustion of administrative remedies under ERISA is treated as an affirmative defense, rather than a pleading requirement. As such, it is not a basis for dismissal at this stage, when the court considers only the facial validity of the complaint."); *cf. Finlay v. Beam Global Spirits & Wine, Inc.,* No. 10 C 5622, 2011 WL 1882508, at *3-4 (N.D. Ill. May 13, 2011) (noting plaintiff's argument that exhaustion is an affirmative defense, but addressing the issue on a motion to dismiss because plaintiff had pleaded his failure to exhaust in his complaint).

6

counterclaim without prejudice, so that he can plead exhaustion based on facts already before the Court, particularly where Etolen makes out a sufficient argument for futility in his responsive briefs.

Relying on *Stark,* 354 F.3d at 671-72, the Welfare Fund asserts that Etolen's argument for a futility exception is "based on speculation that the outcome of the administrative review would not be impartial." Counter-Defs. Reply at 3. In *Stark*, the claimant argued that his failure to exhaust administrative remedies should be excused because: (1) the president of the company responsible for terminating his employment would have also participated in the administrative review of his claim; (2) settlement negotiations with the company had been unsuccessful; and (3) the defendants in the litigation had taken the position that the claimant was not entitled to benefits. *Id*. The Seventh Circuit rejected the claimant's argument, finding that the factors he relied on were likely to be present in all cases. *Id.* at 672. The court concluded that there was no evidence to show that the plan administrator would not have considered the claim or that the president of the company, as a committee member, would have failed to consider the claim fairly. *Id.*

This case is clearly distinguishable from *Stark*. The *Stark* claimant "ignore[d] the administrative remedies and proceed[ed] directly to federal court." *Id.* Here, it is the Funds that proceeded to federal court in the first instance. The Welfare Fund does not find itself as a defendant a law suit because it denied Etolen's claim for benefits; it is here because it chose to sue Etolen. Having filed suit, the Welfare Fund can hardly expect the defendant they have sued to forego a vigorous defense that includes the assertion of any claims he may have against it.

7

And unlike *Stark,* the situation here does not merely involve a case in which just one of the individuals responsible for denying Etolen's benefits would be participating in the review of his appeal. Rather, Etolen would be appealing the denial of benefits to the same trustees that had not only denied him benefits, but had also chosen to sue him personally for fraud. Assuming the Welfare Fund has a good-faith basis for its fraud claim, it seems exceedingly unlikely that the trustees would reach a decision in Etolen's favor on administrative review—an outcome that would assure the dismissal of their claim against Etolen in court. *See, e.g., Board of Trustees of the Pipe Fitters Retirement Fund, Local 597 v. Master-Tech Refrigerator Service, Corp.,* No. 10 C 2246, 2010 WL 5119219, at *4 (N.D. Ill. Dec. 8, 2010) ("Here, requiring Master-Tech to formally request a refund at the administrative level from the very Trustees who initiated this litigation against Master-Tech for unpaid contributions would be futile."); *Central States, Southeast and Southwest Areas Pension Fund v. Howard Baer, Inc.,* 753 F. Supp. 241, 245 (N.D. Ill. 1991) ("It is highly unlikely that the trustees of the fund would change their position in an administrative review where such a change…would strike at heart of the present suit."); *Central States, Southeast and Southwest Areas Pension Fund v. Hoosier Dairy, Inc.,* No. 90 C 3795, 1990 WL 205861, at * 3 (N.D. Ill. Dec. 7, 1990) ("It does not make sense to require Hoosier to formally request a refund of past contributions from the very same trustees who are presently suing Hoosier for continued contributions."); *Alvan Motor Freight, Inc. v. Trs. of Cent. States, Southeast & Southwest Areas Pension Fund,* Nos. 5 C 125, 06 C 809, 2007 WL 6942283, at *3 (W.D. Mich. Dec. 19, 2007) (finding that requiring counter-claimant "to exhaust administrative remedies would be both futile

8

and inefficient"). To the contrary, in light of their decision to take the matter to federal court, it is virtually certain that the trustees would deny Etolen's appeal.

The exhaustion requirement derives from considerations of efficiency and practicality: (1) to reduce the number of frivolous lawsuits under ERISA; (2) to promote consistent treatment of claims; (3) to minimize the costs of claims settlement; (4) to enhance the ability of fund trustees to efficiently manage their funds by preventing premature judicial intervention; (5) to allow the claim issues to be more fully refined and developed for judicial review; and (6) to encourage private settlement. *See Kross,* 701 F.2d at 1244-46 (citing *Amato v. Bernard,* 618 F.2d 559, 567-68 (9th Cir. 1980)); *see also Robyns v. Reliance Standard Life Ins. Co.,* 130 F.3d 1231, 1235 (7th Cir. 1997) ("To make every claim dispute into a federal case would undermine the claim procedure contemplated by [ERISA]" (quoting *Challenger v. Local Union No. 1 of Intern. Bridge Structural, and Ornamental Ironworkers,* 619 F.2d 645, 659 (7th Cir. 1980)); *Richardson v. Astellas U.S. LLC Employee Ben. Plan and Life Ins. Co. of North America*, 610 F. Supp. 2d 947, 953 (N.D. Ill. 2009) (explaining that if claimants could "skip the administrative process" because the same decision-maker responsible for a denying claimant's benefits would be involved in the appeal "the administrative review process would be rendered meaningless (citing *Stark,* 354 F.3d at 672)); *Powell v. AT&T,* No. 88 C 8565, 1990 WL 133229, at *5 (N.D. Ill Sept. 11, 1990) ("If the exhaustion requirement could be avoided by plaintiff's theory under which a claim, hypothetically, might have been denied, then the futility exception swallows the rule."). Those considerations are not implicated by a participant's claim in federal court, however, when it is the Plan itself that initiates the court proceedings. To the contrary, efficiency considerations favor

9

excusing the exhaustion requirement where, as here, the issues relevant to the denial of benefits will already have to be litigated in the judicial proceeding initiated by the Plan. It simply makes no sense to require Etolen to request restitution and reinstatement in the healthcare plan at the administrative level when the same issues relevant to that dispute must also be litigated in the law suit filed by the Welfare Fund. *See, e.g., Central States, Southeast and Southwest Areas Pension Fund v. Groesbeck Lumber & Supply, Inc.,* No. 99 C 1447, 2000 WL 246249, at *2 (N.D. Ill. Feb. 24, 2000) ("Because the Fund has already brought this ERISA dispute into court, it makes sense to let Groesbeck bring its refund claim in the same forum at the same time."). The requirement of exhaustion of remedies is designed to prevent piecemeal litigation, not to promote it.

The facts of the counterclaim go beyond a suggestion that the Welfare Fund's trustees *might* be partial in their review of Etolen's counterclaim, as the Welfare Fund suggests, but show that the Funds have reached a final decision on the matter. *See, e.g., Howard Baer, Inc.,* 753 F. Supp. at 245 ("The mere fact that the Pension Fund has brought suit against [the defendant]…shows that they have already reached a conclusion about [the defendant's] case."). Where the record demonstrates that Etolen's claim would be, or would have been, denied on administrative review, this Court has discretion to excuse the failure to exhaust administrative remedies by a claimant. *See Ruttenberg v. United States Life Ins. Co.,* 413 F.3d 652, 663 (7th Cir. 2005). Etolen has demonstrated the futility of pursuing administrative remedies on the basis of the fraud suit initiated by the Funds. Accordingly, Etolen's failure to exhaust administrative remedies is excused, and the Welfare Fund's motion to dismiss the counterclaim is denied.

## Conclusion

For the foregoing reasons, the Welfare Fund's motion to dismiss is denied.

Date: August 17, 2012

_____
John J. Tharp, Jr.
United States District Judge